IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOAN M. GALVIN,                          )
                                         )
              Plaintiff,                 )
                                         )
       v.                                )        Civil Action No. 08-1317
                                         )        Judge Nora Barry Fischer
MICHAEL J. ASTRUE,                       )
Commissioner of Social Security,         )
                                         )
              Defendant.                 )

**MEMORANDUM OPINION**

**I.     Introduction**

Plaintiff Joan Galvin ("Plaintiff") brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("SSA") 42 U.S.C. §§401-433, 1381-1383(f).  This matter comes before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56. (Docket Nos. 8 and 10).  For the following reasons, Plaintiff's Motion for Summary Judgment [8] is DENIED and the Commissioner's Motion for Summary Judgment [10] is GRANTED.

**II.    Procedural Background**

Plaintiff filed an application for DIB and SSI on November 21, 2005, alleging disability due to depression, with an onset date of November 1, 2003. (Docket No. 6-1 at 60-62; R. at 58-60) (hereinafter "R. at ___").  Plaintiff's claims were initially denied by the Commissioner on June 30, 2006. (R. at 11).  Thereafter, Plaintiff filed a timely request for a hearing before an administrative

1

law judge ("ALJ"). (R. at 11-24). A hearing was held before an ALJ on November 14, 2007. (R. at 34-37; 182-226). Plaintiff appeared and testified, without the assistance of counsel.[1] (R. at 14, 182-226). On January 22, 2008, the ALJ issued a decision, denying Plaintiff's claims and concluding that Plaintiff was not disabled within the meaning of the Act. (R. at 23-24). Plaintiff filed a timely appeal of the ALJ's determination on February 11, 2008. (R. at 4). The Appeals Council denied Plaintiff's request for review on August 14, 2008. (R. at 4-6). Having exhausted all administrative remedies, Plaintiff filed this action on September 22, 2008, seeking judicial review of the Commissioner's decision. (Docket No. 1). Plaintiff filed her Motion for Summary Judgment and Brief in Support on February 9, 2009. (Docket Nos. 8 and 9). The Commissioner filed a Motion for Summary Judgment and Brief in Support on March 2, 2009. (Docket Nos. 10 and 11). Thereafter, Plaintiff

---

[1]

Plaintiff argues that because she was unrepresented at the administrative hearing, she could not have been expected to make the appropriate inquiries of the vocational expert who testified, thereby warranting a remand. (*See* Docket No. 9 at 15; Docket No. 14 at 10-11). However, the Court notes that the ALJ did inform Plaintiff of the option of free legal services and the availability of resources for help in appealing her decision. (R. at 14). The ALJ also questioned Plaintiff at the hearing about her efforts in obtaining representation, but she stated in response that she wanted to "just do it alone." (R. at 185-86). She agreed to proceed with the hearing without representation. (R. at 190). The ALJ questioned her extensively about the completeness of the medical records and also advised her of the purpose the hearing, the standards for disability, and how he makes a decision. (*Id.* at 187-90). The ALJ also offered to answer any question by Plaintiff as the hearing proceeded. (*Id.* at 191). Upon the ALJ's inquiry, Plaintiff did not have any objections to the vocational expert's testimony. (R. at 215). At the end of the hearing, the ALJ gave Plaintiff the opportunity to speak and provide any information that she thought was not covered. (*Id.* at 221). Plaintiff was also given the opportunity to send further information, if need be, after the hearing. (*Id.* at 224).

The Court further notes that Plaintiff has not cited any case law for the proposition that because a claimant is unrepresented at the administrative stage, this Court is required to give less deference to the ALJ's decision. While an ALJ does have a duty to assist a pro se claimant in developing a full record by obtaining all relevant medical records and asking questions of the claimant, *Peed v. Sullivan*, 778 F.Supp.1241, 1246 (E.D.N.Y. 1991)(citations omitted), this Court's research did not find any case where a court held that because a claimant was unrepresented, the ALJ's decision is entitled to less deference. Accordingly, the Court will not remand this action on the basis that because Plaintiff was unrepresented, and thus allegedly unable to ask the proper questions, this case should be remanded for reconsideration.

2

filed a Reply Brief on March 27, 2009. (Docket No. 14).

### III.    Factual Background

Plaintiff was born on January 7, 1960, (R. at 31), making her 43 years old as of her alleged onset date. (*Id.*).  She completed her high school degree and a post- high school business program. (R. at 216).  Her past relevant work[2] includes work as a real estate secretary, office manager, mail clerk/candler[3] and dry cleaner worker. (R. at 217-218).

### A.    Plaintiff's Medical Background

#### 1.    *Records from Plaintiff's Mental Health Care Providers*

At the request of her primary care physician, Plaintiff went to the Turtle Creek Valley Mental Health/Mental Retardation Clinic ("Turtle Creek") for a psychological assessment on January 10, 2006. (R. at 104). An initial clinical assessment was performed by Angela Hauck, a licensed social worker. (*Id.*).  At the time of the assessment, Plaintiff reported to Ms. Hauck that she had felt depressed for about five years. (*Id.*).  She expressed feelings of hopelessness, worthlessness and lack of confidence. (R. at 110).  Additionally, she indicated that she suffered from poor concentration, crying spells, decreased sleep and lack of energy or motivation.  (*Id.*). At this time, she denied any suicidal or homicidal ideation, but did report having a "death wish." (R. at 107- 110).  Plaintiff reported that she had suffered physical and emotional abuse from her ex-husband, whom she

---

2

Past relevant work is defined as work that a claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 40 C.F.R. § 404.1560(b)(1).

3

Plaintiff defined the candler position as passing envelopes over a lighted table and retrieving checks from the envelopes. (R. at 196).  The candler position, based on Plaintiff's testimony, would be classified in the Dictionary of Occupational Titles ("DOT") as a mail clerk other than United States Postal Service, inspecting documents. (R. at 218).

divorced in 2004. (R. at 111). She also reported that she become the primary caretaker of her grandson in 2002. (R. at 110). Plaintiff indicated that she had been taking Wellbutrin[4] prior to this assessment as it was prescribed by her primary care physician. (R. at 116). She reported that the Wellbutrin helped to decrease her crying spells. (*Id.*). Ms. Hauck's assessment was that Plaintiff suffered from Major Depressive Disorder and assigned her a Global Assessment of Functioning ("GAF")[5] score of 50. (R. at 115).

On January 11, 2006, Plaintiff was seen by a psychiatrist, Dr. Gail Kubrin, for a psychiatric evaluation.[6] (R. at 117). Records from Plaintiff's visit with Dr. Kubrin indicate that Plaintiff had been treated for depression by her primary care physician since 1997. (*Id.*). She had been prescribed Zoloft,[7] Wellbutrin and Lexapro.[8] (*Id.* at 120). Plaintiff reported that she had feelings of fear and

---

[4]

Wellbutrin is used to help relieve major depression. *See* www.pdrhealth.com.; last visited July 21, 2009. It works by altering levels of the brain chemicals norepinephrine and dopamine. *Id.*

[5]

The GAF scale, designed by the American Psychiatric Association, ranges from zero to one hundred and assesses an individual's psychological, social and occupational function. *Diagnostic and Statistical Manual of Mental Disorders*, (DSM-IV-TR) (4th ed. 2000). A score between 41 and 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupation or school functioning (e.g., no friends or unable to keep a job). *Id.* Because the GAF scale does not directly correlate to the severity requirements in the mental disorders listings, a GAF score should be considered with all of the evidence but it is not dispositive. *Id.*

[6]

Dr. Kubrin is a psychiatrist with over 20 years of experience with the group practice of Turtle Creek Valley MH/MR.
*See http://www.ucomparehealthcare.com/drs/pennsylvania/psychiatry/Kubrin_Gail.html*; last visited July 21, 2009.

[7]

Zoloft is another drug prescribed for major depression. *See* www.pdrhealth.com.; last visited July 21, 2009. It is quickly absorbed after its release at the junctures between nerves, boosting the levels of serotonin available in the brain. *Id.*

[8]

Lexapro is also used to treat major depression. *See* www.pdrhealth.com.; last visited July 21,

confusion. (*Id.*)  She also reported that her moods went up and down for the year and a half time period prior to Dr. Kubrin's assessment. (*Id.* at 117-119).  Additionally, she reported that she had trouble getting out of bed during that time period. (*Id.*).  The records also indicate that Plaintiff reported occasional marijuana use. (R. at 118)  She also reported to Dr. Kubrin that she drank during Christmas and New Year's of 2005 and blacked out during this time period.  (*Id.*).  She also advised that she goes out to clubs every other weekend. (*Id.*)  Prior to her appointment with Dr. Kubrin, she had a beer but denied being intoxicated. (*Id.*). Plaintiff also reported, at the time of the examination, that she smoked one pack of cigarettes per day. (*Id.*).

Based on the examination and the assessment performed by Angela Hauck, Dr.Kubrin diagnosed Plaintiff as having major depressive disorder, characterized by a moderate single major depressive episode. (R. at 119).  Dr. Kubrin recommended that Plaintiff's Wellbutrin decrease and that she start taking Effexor.[9] (*Id.*).  Additionally, Dr. Kubrin recommended that Plaintiff decrease and/or stop alcohol intake and that she begin therapy. (*Id.*).

Plaintiff saw Dr. Kubrin again on February 15, 2006. (R. at 121).  At that time, Plaintiff indicated that she was sleeping better and not crying as much. (*Id.*).  She further indicated that she still lacked energy and interest, but did state that was going out every other weekend and drinking on Friday and Saturday evenings. (R. at 121-122).  Dr. Kubrin increased Plaintiff's dosage of Effexor and restarted Wellbutrin. (R. at 122).

Progress notes from Turtle Creek indicate that Plaintiff was next seen by Dr. Kubrin in

---

2009. It works by boosting the levels of serotonin in the brain. *Id.* This drug is a close chemical cousin of the another antidepressant medication, citalopram. *Id.*

[9]

Effexor is another drug used to treat depression, as well as abnormal anxiety. *See* www.pdrhealth.com.; last visited July 21, 2009.

September of 2006. (R. at 148-150).  The records indicate that, during this visit, Plaintiff was tearful and upset. (R. at 149).  Dr. Kubrin also noted that Plaintiff continued to drink. (R. at 150),[10] and that Plaintiff reported trouble sleeping and vivid, disturbing dreams. (*Id.*).  At this time, Dr. Kubrin recommended that Plaintiff stop drinking alcohol and continue with therapy. (*Id.*). Plaintiff was assigned a GAF score of 45 at this time and her diagnoses included major depressive disorder and continuous alcohol abuse. (R. at 164).

Plaintiff was seen by Dr. Kubrin again in October of 2006. (R. at 146).  Dr. Kubrin noted moderate progress. (*Id.*).  At that time, Plaintiff reported that she felt better a few days after her medication was adjusted. (*Id.*).  Plaintiff also reported that she felt less helpless and hopeless. (*Id.*). She indicated that she was working on her house, going out with friends and that she liked the winter and fall months. (R. at 147).  She also stated that her boyfriend helped her to get out of the house more during the summer months. (*Id.*).  Dr. Kubrin noted that Plaintiff was doing well and had quit smoking.  (*Id.*).  She recommended that Plaintiff continue therapy and increase her activity level. (*Id.*).  In December of 2006, Plaintiff indicated that she "still gets to have some fun." (R. at 166). She was prescribed Effexor, Wellbutrin and Topamax[11] and directed to continue therapy with Angela Houck. (*Id.*).  It was also recommended that Plaintiff decrease her alcohol intake. (*Id.*).

Medical records from Turtle Creek dated February 21, 2007 indicate that Plaintiff had made mild  progress. (R. at 162).  She reported that her sleep was disturbed, but that she was able to fall

---

[10]

Specifically, Dr. Kubrin noted that Plaintiff had consumed six beers the day before the examination. (R. at 150).

[11]

Topamax is an antiepileptic drug, prescribed to control both the mild attacks known as partial seizures and the severe tonic-clonic convulsions known as grand mal seizures, while it is also prescribed to prevent migraine headaches. *See* www.pdrhealth.com.; last visited July 21, 2009.

6

asleep quickly. (R. at 163). Additionally, she reported that she continued to drink two to three days per week. (*Id.*). Dr. Kubrin recommended that she see a therapist more regularly. (Id.).

### 2.    Records from Consultative Examiner

Plaintiff was referred to James E. Williams, a licensed psychologist at Suburban Psychological Services for a Clinical Psychological Disability Evaluation. (R. at 124).   The evaluation was done on April 24, 2006. (*Id.*). The records from the evaluation indicate that Plaintiff had no history of psychiatric hospitalization. (R. at 125).   Additionally, Plaintiff reported that she experienced numbness, pain and difficulty with dexterity as a result of an automobile accident. (*Id.*). Plaintiff also reported that her sleep had previously been affected, but that it was improving prior to the evaluation. (*Id.*).   Additionally, Plaintiff stated that she experienced pain, depression and anxiety. (*Id.*).   At this time, Plaintiff was oriented to the exact time, as well as place, person, object and her own ego identity. (*Id.*). Dr. Williams noted Plaintiff's ability to provide serial sevens from 100 and to provide the correct capitals of several countries. (R. at 125). Dr. Williams' impression was that Plaintiff suffered from major depression, characterized as single episode and moderate, as well as a tobacco addiction. (*Id.*). He assigned a GAF score of 50. (*Id.*). Based on the evaluation, Dr. Williams opined that Plaintiff had slight impairments in her ability to interact appropriately with the public and supervisors, moderate limitations in her ability to interact appropriately with co-workers and to respond appropriately to changes in a routine work setting, and marked limitations in her ability to respond to work pressures in a usual work setting. (R. at 127).

A Mental Residual Functional Capacity Assessment was performed by Douglas Schiller, Ph.D. on June 19, 2006. (R. at 129-144).   Dr. Schiller determined, based on the medical evidence of record, that Plaintiff suffered from depression. (R. at 131).   He further opined that Plaintiff would be able to carry out very short and simple instructions and have no restrictions in her ability in regard

7

to basic understanding and memory. (*Id.*).   Additionally, it was Dr. Schiller's opinion that his assessment was consistent with Dr. Williams' examination and fairly consistent with the medical evidence provided by Plaintiff's treating sources. (*Id.*). It was Dr. Schiller's opinion that Plaintiff appeared "to be able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairments." (*Id.*).

**B.       Administrative Hearing**

Plaintiff appeared and testified at an administrative hearing on November 14, 2007, without counsel. (R. at 182-226).   At the hearing Plaintiff testified that at the age of forty she completed a certificate at Duff's Business School, graduating with honors and making President's List and Dean's List. (R. at 193).   She further testified that she is able to read and comprehend what she reads. (Id.).

In regard to her mental health problems, Plaintiff testified that, at the time of the hearing, she saw Angela Hauck roughly once a month for therapy. (R. at 201-202).   She also testified that she was seeing Dr. Kubrin roughly once a month at that time, as well. (R. at 202).   According to Plaintiff, she had never been hospitalized for mental health issues. (R. at 203).   She testified that she is not suicidal but she has a "death wish."   (*Id.*).   At the time of the hearing, Plaintiff found it hard to get out of bed and had no ambition. (R. at 204).   She also testified that she loved to read, but could no longer bring herself to read. (*Id.*). She stated that she cannot handle stress. (R. at 208).   Plaintiff testified that she did not abuse alcohol, but did state that she was drinking every other weekend at the time of the hearing. (R. at 206).   She described that, on an average day, she will just "sit around ... stare a lot, stare at the TV a lot ...make my bed...make sure things are tidy, but mostly just sit around the house." (R. at 211).   She also testified that she shops, but feels like she is not buying the right things. (R. at 213).

In regard to her past work experience, Plaintiff testified that from 1990 to 1995 she worked as a laborer at a dry cleaning establishment. (R. at 195).  Her responsibilities in this position included prepping clothes, cleaning and pressing, putting clothes in bags, ringing up customers and retrieving their clothing. (*Id.*).  She further testified that, from 1996 to 1998 she worked as a candler at Allsafe. (*Id.*).  Her responsibilities in this position included passing envelopes over a lighted table and retrieving checks from the envelopes. (R. at 196).  Plaintiff testified that the job also included lifting bags, but did not include any type of record keeping. (*Id.*).  Plaintiff also testified that she stood all day in this position. (R. at 197).

Plaintiff testified that, after Allsafe, she took a secretary position at a real estate firm. (R. at 198).  Her responsibilities included managing the office, handling paperwork, opening mail and typing letters and answering phones. (R. at 198-199).  Her most recent job was at a dry cleaning establishment in 2007, a few months prior to the administrative hearing. (R. at 199).  Plaintiff testified that she attempted to go back to work but that she "just lost it" and had to leave the position after a month and a half. (*Id.*).  Additionally, Plaintiff testified, at the time of the hearing she was employed as a substitute cafeteria worker for Norwin School, but had not been called to work for a long period of time. (R. at 201). Plaintiff then stated she had been taking care of her grandson, for whom she had been caring since his mother "walked out on him," and that having to be there for her grandson was one reason she had not gone back to work. (R. at 207-208).

In addition to Plaintiff's testimony, the ALJ heard the testimony of a vocational expert, Tim Mahler.[12] (R. at 214).  The vocational expert testified that, prior to the hearing he did not understand

---

[12]

Mr. Maher is a certified rehabilitation counselor and a certified insurance rehabilitation specialist. (R. at 55-56). He received his undergraduate degree from Duquesne University and his masters of education in counseling from University of Pittsburgh. (*Id.*).

the term "candler," but that, from Plaintiff's testimony, he understood the position. (R. at 218). He further testified that the candler position, based on Plaintiff's testimony, would be classified in the Dictionary of Occupational Titles ("DOT")[13] as a mail clerk other than United States Postal Service, inspecting documents. (*Id.*). The vocational expert stated that this position would be classified as light[14], unskilled work, with a specific vocational preparation of 2. (*Id.*). The DOT code for said position is 209.687-026. (*Id.*).

## IV.    Standard of Review

When reviewing a decision denying DIB and SSI, the district court's role is limited to determining whether substantial evidence exists in the record to support the ALJ's findings of fact. *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389,

---

[13]

The DOT is a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy. It specifies the general educational requirement, including the level of reasoning skills required for each job. It is available at http://www.occupationalinfo.org/.

[14]

20 C.F.R. §404.1567(b) defines "light work" as working that:

involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

401 (1971)). Additionally, a district court cannot conduct a *de novo* review of the Commissioner's determination, nor re-weigh the evidence of record. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Rather, if the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. §405(g); *Richardson*, 402 U.S. at 390. In determining whether a finding is supported by substantial evidence, the district court must review the record as a whole. *See* 5 U.S.C. §706; *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 431 (3d Cir. 1999). The Court, however, "will not set the Commissioner's decision aside if it is supported by substantial evidence, even if [the court] would have decided the factual inquiry differently" based on the evidence of record. *Hartranft*, 181 F.3d at 360.

## V.   Discussion

Under the SSA an individual is considered "disabled" when he or she is

> unable to engage in any substantial gainful activity by reasons of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months ...

42 U.S.C. §§416(i)(1)(A); 423(d)(1)(A); 20 C.F.R. 404.1505. A person is "unable to engage in substantial gainful activity" when she:

> is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work. ...

42 U.S.C. §423(d)(2)(A).

In order to determine whether a claimant meets the definition of disabled under the SSA, the Commissioner applies a five step evaluation process. 20 C.F.R. §404.1520. *See McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360 (3d Cir. 2004). At step one of this process, the

11

Commissioner must determine whether the claimant has been engaged in any substantial gainful activity for the relevant time period. 20 C.F.R. §404.1520(a)4(i). If not, the evaluation process proceeds to step two. *Id.* At this step, the Commissioner must determine whether the claimant has a "severe impairment". 42 U.S.C. §404.1520(a)(4)(ii). If so, then the Commissioner must determine whether the impairment or combination of impairments meets or equals the criteria of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix. 1. 42 U.S.C. §404.1520(a)(4)(iii). If the claimant's impairment or combination of impairments do not meet or equal a listed impairment, the evaluation process proceeds to step four and the Commissioner must determined whether the claimant's severe impairments prevent her from returning to past relevant work.  42 U.S.C. §404.1520(a)(4)(iv). If the Commissioner determines that the claimant cannot return to past relevant work, he must determine, at step five, whether the claimant can perform other work that exists in the national economy, considering the claimant's residual functional capacity, age, education and work experience.  42 U.S.C. §404.1520(a)(4)(v). *See also McCrea*, 370 F.3d at 360; *Sykes v. Apfel*, 228 F.3d 269, 262-63 (3d Cir. 2000).

Here, the ALJ determined, at step one of the sequential evaluation process, that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 1, 2003. (R. at 16).  At step two, the ALJ determined that Plaintiff has the following severe impairments: a depressive disorder and history of alcohol abuse. (Id.). However, at step three, the ALJ determined that Plaintiff's impairment or combination of impairments do not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17).

The ALJ determined, at step four, that Plaintiff is capable of performing past relevant work as a candler.  (R. at 23).  In reaching said conclusion, the ALJ first determined that Plaintiff has the residual functional capacity to perform work at all exertional levels. (R. at 18). The ALJ further

determined that Plaintiff's non-exertional impairments limit her residual functional capacity to simple, routine tasks. (*Id.*).   In determining that Plaintiff's residual functional capacity permits her to return to past relevant work as a candler, the ALJ concluded that, based on Plaintiff's capacity for work and the "physical and mental demands" of her previous work experience, she would be capable of working as a candler, "as this job is generally performed in the national economy." (R. at 23). As such, the ALJ concluded that, because Plaintiff is capable of returning to past relevant work, she is not disabled, as defined by the SSA. (*Id.*).

Plaintiff challenges the ALJ's determination at step four of the sequential evaluation process. Specifically, Plaintiff argues that the ALJ erred by: (1) failing to give a detailed "function by function" assessment of her residual functional capacity; therefore, the ALJ deprived the Court of a sufficient basis in the record for determining whether evidence was credited or simply ignored; (2) determining that Plaintiff's residual functional capacity limited her to simple routine work, as said residual functional capacity is not supported by the evidence and it is impermissibly vague; and (3) failing to inquire about conflicts between the testimony of the vocational expert and the DOT description of Plaintiff's past relevant work experience. (Docket No. 9 at 2).   For the following reasons, the Court finds that the ALJ's determination is supported by substantial evidence and will affirm.

### A.  Substantial Evidence Supports the ALJ's Residual Functional Capacity Determination

In regard to her residual functional capacity, Plaintiff first argues that the ALJ erred by failing to give a detailed function by function assessment. (Docket No. 9 at 5).   Specifically, Plaintiff contends that the ALJ failed to properly analyze Plaintiff's ability to "tolerate work-like stresses" as a result of her non-exertional limitations. (Docket No. 9 at 7).   Additionally, Plaintiff argues that

the ALJ failed to assess Plaintiff's mental capacity to work with the mental demands of unskilled work. (*Id.*).  As such, Plaintiff argues, the Court is without information as to whether "significant probative evidence was not credited or simply ignored" and, therefore, the ALJ's determination should be remanded. (Docket No. 9 at 6) (quoting *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 121 (3d Cir. 2000)).

Second, Plaintiff argues that the ALJ erred in determining her residual functional capacity because the ALJ's finding that she is capable of performing "simple, routine" work is "impermissibly vague." (Docket No. 9 at 8).  Specifically, Plaintiff contends that the ALJ failed to explain how her specific job-related limitations supported his determination that she is limited to simple, routine tasks. (*Id.*).  Plaintiff contends that both the consultative examiner and the state agency reviewing psychologist concluded that Plaintiff had either marked or several moderate limitations in her ability to perform work like functions, but the ALJ failed to indicate how these limitations affect Plaintiff's ability to maintain pace or complete a work week appropriately. (Docket No. 9 at 9-10).  Moreover, Plaintiff contends that the ALJ fails to connect Plaintiff's GAF scores of 50 or lower to his residual functional capacity determination. (Docket No. 9 at 10).

In response to Plaintiff's arguments, the Commissioner argues that the ALJ's residual functional capacity determination is supported by substantial evidence. (Docket No. 11 at 10). Specifically, the Commissioner contends that Plaintiff's mental health examinations were "generally benign" and support the determination that Plaintiff has the ability to complete short and simple instructions and meet the demands of competitive work on a sustained basis. (Docket No. 11 at 10, 11-12). The Commissioner further argues that Plaintiff's self reports of daily activity support the ALJ's residual functional capacity determination. (Docket No. 11 at 11).

A claimant's residual functional capacity is defined as "that which an individual is still able

to do despite the limitations caused by his or her impairment(s)."  20 C.F.R. §404.1525(a)(1); *see also Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (quoting *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 121 (3d Cir. 2000)) (quotations omitted)). The Commissioner determines a claimant's residual functional capacity by performing a function-by-function assessment of a claimant's ability to do work related activities. *See* S.S.R. 96-8, 1996 WL 374184 at *1 (holding that, in determining a claimant's residual functional capacity, the Commissioner "must first identify the individual's functional limitations and restrictions and assess his or her work-related abilities on a function-by-function basis"); *see also* 20 C.F.R. §§ 404.1545, 416.945;  *Salles v. Commissioner of Social Security*, 229 Fed.Appx.140, 149 n. 7 (3d Cir. 2007)).  In making this assessment, the Commissioner must consider all impairments, including those determined to be non-severe. 20 C.F.R. §404.1545(a)(2). The Commissioner must also consider all of the evidence of record in making a residual functional capacity determination. *Burnett*, 220 F.3d at 121 (citing *Plummer v. Apfel*, 186 F.3d 422, 249; *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986)). The evidence of record includes all medical records, as well as "observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001). "Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121 (citations omitted).

In this case, the ALJ made the following specific findings regarding Plaintiff's residual functional capacity.  The ALJ first determined, based on the objective evidence and testimony of record that the claimant has no physical impairments that would prevent her from performing work at all levels of exertion, including sedentary, light, medium and heavy work activity.  (R. at 19).

Rather, the ALJ determined that Plaintiff suffers from solely mental impairments, including depressive disorder and history of alcohol abuse. (*Id.*).  The ALJ then considered "the claimant's ability to [1] perform activities of daily living, [2] function in a social setting, [3] concentrate, [4] persist or maintain pace, and [5] whether the claimant has experienced any episodes of decompensation." (*Id.*).  The ALJ first determined that Plaintiff had mild limitations in her activities of daily living, considering specifically her self-reported activities, including caring for herself, her grandson, watching television, driving, shopping and performing household chores. (*Id.*).  The ALJ also noted Plaintiff's own testimony that she belongs to an Italian Club and goes there every other weekend with friends. (*Id.*).  Moreover, the ALJ noted that Plaintiff testified that, in October 2007, she attempted to look for work. (*Id.*).  The ALJ also considered notes from Plaintiff's treating psychiatrist, Dr. Kubrin, who noted in June 2006 that Plaintiff was attempting to get more exercise and to do yard work. (R. at 19-20).

The ALJ then considered Plaintiff's limitations in social functioning, and found that these were mild. (R. at 20).  Specifically, the ALJ considered Plaintiff's testimony that she drank socially at a local club twice a month and that she reported getting along with people in authority. (*Id.*).  The ALJ also considered the records of Dr. Kubrin, which noted that Plaintiff reported in February 2006 that she had been going out every other weekend.  (*Id.*).  Further, the ALJ noted that the consultative examiner, Dr. Williams, opined that Plaintiff was "only slightly restricted" in her ability to interact with the public and supervisors. (*Id.*) The ALJ considered that the medical records indicate that no treating source had noted any signs of inappropriate behavior on examinations, nor does the record contain evidence of legal difficulties. (*Id.*).  The ALJ also considered Plaintiff's behavior at the administrative hearing and found that "she displayed no inappropriate social behavior." (*Id.*).

The ALJ also specifically addressed Plaintiff's limitations in regard to concentration,

16

persistence or pace, finding that she had moderate limitations, but retains the ability to perform simple, routine tasks. (*Id.*).  In making this determination, the ALJ noted that the medical records from psychiatric evaluations indicate, *inter alia*, that Plaintiff is only slightly restricted in her ability to understand, remember and carry out short, simple instructions. (*Id.*).  Additionally, she is moderately restricted in her ability to function with detailed instructions. (*Id.*).  The ALJ also specifically points to notes from Dr. Kubrin's evaluation in November 2007, indicating that Plaintiff had an improved mood and affect and improved insight and judgment. (*Id.*).  Furthermore, the ALJ considered Plaintiff's ability to testify at the administrative hearing and noted "no overt lapses in concentration." (R. at 21).

In addition to theses specific assessments as to Plaintiff's ability to perform work functions, the ALJ also considered Plaintiff's response to treatment, including both psychotropic medication and regular therapy, and noted that her mental health conditions appeared to be "adequately controlled" based on the medical evidence. (*Id.*).  The ALJ also considered Plaintiff's history of alcohol abuse, but found that said impairment does not affect her ability to perform basic work-related activities. (*Id.*). He evaluated Plaintiff's subjective complaints of neck and right arm pain and numbness and dexterity problems and noted that Plaintiff admitted said pain was not as bad as it had been in the past as of the administrative hearing. (R. at 22).  The ALJ also noted that the medical evidence does not support a determination that her physical complaints are limiting. (*Id.*).

Based on the above analysis, the Court finds that the ALJ performed an adequate function-by-function assessment of Plaintiff's ability to perform work functions, in light of her mental health impairments. Furthermore, the ALJ properly evaluated the Plaintiff's ability to handle work-like functions, including her ability to perform activities of daily living, her ability to  function in a social setting and her ability to concentrate, persist or maintain pace as it relates to Plaintiff's ability to

perform unskilled work. (R. at 19-22).

Indeed, in determining Plaintiff's residual functional capacity, the ALJ clearly and adequately evaluated the medical evidence of record, including the opinions of treating physicians regarding GAF score and functional limitations, and gave specific reasons for either accepting or discounting said evidence. The ALJ considered the opinions of Plaintiff's treating mental health care providers as well as the consultative and state agency examiners.  In addition, the ALJ considered Plaintiff's subjective complaints and found them to be partially consistent with the objective medical evidence. Moreover, the ALJ adequately discussed the bases for his determination by considering all of Plaintiff's limitations and their affect on her ability to perform work functions.  *See e.g., Tuohy v. Commissioner of Social Security*, 127 Fed. Appx. 62,  66 (3d Cir. 2005) (holding that, where the ALJ evaluated specific activities related to the plaintiff's past employment and reviewed all relevant evidence related to the plaintiff's capacity to work, he did not err in his residual functional capacity determination); *Santiago v. Barnhart*, 367 F.Supp. 2d 728, 734 (E.D. Pa. 2005); *c.f. Burnett*, 220 F.3d at 121 (holding that remand was appropriate where the ALJ failed to evaluate all of the medical evidence of record and thus, the court was unable to assess whether the ALJ's residual functional capacity was supported by substantial evidence). As such, substantial evidence supports the ALJ's determination that Plaintiff has the residual functional capacity to perform unskilled work, limited to simple, repetitive tasks.  *See Hartranft*, 181 F.3d at 360 (holding that, where the ALJ's determination is supported by substantial evidence, it will not be disturbed by the reviewing court).

Furthermore, the ALJ's residual functional capacity is not unduly vague, as Plaintiff argues. Rather, substantial evidence supports the ALJ's determination that Plaintiff's non-exertional impairments limit Plaintiff to simple, routine work and the ALJ did not err by failing to make a more

18

particularized residual functional capacity findings.

While Plaintiff argues that the United States Court of Appeals for the Third Circuit's holding in *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004) applies here, the Court finds that this case is inapposite to the instant matter.  In *Ramirez*, the Court of Appeals held that the ALJ in that case failed to pose a hypothetical question to the vocational expert that adequately reflected all of the claimant's impairments, insofar as the ALJ failed to include limitations in concentration, persistence and pace in the hypothetical. As such, the Court of Appeals determined, the vocational expert's testimony did not constitute substantial evidence in regard to the ALJ's determination of the claimant's ability to perform work. *Id.* at 552.

Here, Plaintiff argues that the determination that she has the residual functional capacity to perform work at all exertional levels, but with the additional limitation that she avoid no more than simple, routine tasks is impermissibly vague.  (Docket No. 5-7).  However, the Court finds that the record in this case does not support a need for greater specificity in the ALJ's residual functional capacity determination. *See Christner v. Astrue*, Civil Action No. 08-991, 2009 WL 186010 at *9 (W.D. Pa. January 27, 2009).  Indeed, the ALJ addressed Plaintiff's moderate deficiencies in persistence, pace and concentration and gave specific reasons for his determination in regard to the limitations imposed by said deficiencies, but found Plaintiff capable of performing simple, routine tasks based on the evidence of record. (R. at 21).

The Court does not agree that, simply because the ALJ found deficiencies in these areas, he was required to make a more specific finding in regard to residual functional capacity. *See Santiago-Rivera v. Barnhart*, Civil Action No. 05-5698, 2006 WL 2794189 at *12 (E.D. Pa. September 26, 2006) (holding that, unlike the record in *Ramirez*, the record did not portray specific objective

19

medical evidence of specific deficiencies.  Rather, "the record suggest[ed] that [claimant's] mental deficiences would not limit her ability to perform simple tasks," thus a more specific residual functional capacity was not needed); *c.f. Ramirez*, 372 F.3d at 552. Moreover, in this case, the Court finds that the record does not reflect the need for a more specific determination regarding Plaintiff's residual functional capacity.  Rather, as discussed above, substantial evidence supports the ALJ's determination that Plaintiff is capable of performing simple, routine tasks. Specifically, Plaintiff's mental status examinations by Dr. Kubrin support the finding that Plaintiff had Major Depressive Disorder, but no other specific limitations were noted from those examinations. (R. at 117-23, 149-65).  Additionally, assessments by Dr. Williams and Dr. Schiller found only moderate limitations in regard to Plaintiff's ability to understand and carry out instructions, to interact and respond appropriately to co-workers and changes in the work setting, and in maintaining attention and concentration, with no other specific findings. (R. at 127-29).  Furthermore, both Dr. Williams and Dr. Schiller found Plaintiff to be able to care for herself and to meet the basic mental demands of competitive work. (R. at 128, 131). Because substantial evidence supports the determination that Plaintiff is limited to simple, routine tasks and no other specific deficiencies can be found in the record, the determination of the ALJ must be affirmed.

### B.     Substantial Evidence Supports the ALJ's Determination that Plaintiff is Capable of Returning to Past Relevant Work as a Candler

Plaintiff argues that the determination of the ALJ in regard to Plaintiff's ability to perform past relevant work as a candler should be remanded, insofar as the ALJ failed to inquire about conflicts between the vocational expert's testimony and the DOT and relied upon the vocational expert's testimony, which conflicted with the DOT. (Docket No. 9 at 12-15). In response, the Commissioner contends that Plaintiff's claims are without merit, as the ALJ was not required to rely

on vocational expert testimony at step four of the sequential evaluation process and, furthermore, the record evidence supports the ALJ's determination that Plaintiff can perform the functions of her past relevant job of candler. (Docket No. 11 at 14-15).  The Court agrees with the Commissioner.

In order to determine whether a claimant can perform past relevant work, the Commissioner must determine the "'physical and mental demands of jobs a claimant has performed in the past.'" *Burnett*, 220 F.3d at 122 (quoting SSR 92-62).  The United States Court of Appeals for the Third Circuit has set forth a three step analysis for determining whether a claimant is capable of returning to past relevant work:

> (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett*, 220 F.3d at 120 (citing 20 C.F.R. §404.1561; S.S.R. 82-62; *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir.1996)); *see also Frazier v. Commissioner of Social Security*, 240 Fed. Appx. 495, 498 (3d Cir. 2007) (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)). Moreover, the Court of Appeals has adopted the rule set forth in Social Security Ruling 82-62 in regard to the evidence that should be considered in determining whether a claimant can perform past relevant work:

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the *individual's* statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of

21

> Occupational Titles, etc., on the requirements of the work as generally performed in
> the economy.

*Id.* (quoting S.S.R 82-62) (emphasis in original). "The assessment of a claimant's past relevant work must be based on some evidence drawn from the above three categories listed in S.S.R. 82-62." *Id.* (citing *Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir. 1986); *Cotter v. Harris*, 642 F.2d 700, 707 (3d Cir. 1981)). The Commissioner's determination regarding a claimant's ability to perform past relevant work will be clear error where it is contrary to evidence presented by the claimant or where it is not supported by substantial evidence. *Id.* at 123.

Here, the ALJ made specific findings as to Plaintiff's residual functional capacity and determined that, based on Plaintiff's mental health impairments, she is capable of performing unskilled work at all exertional levels, with the additional limitation that she is limited to simple, repetitive tasks. (R. at 18). Additionally, in regard to the physical and mental demands of Plaintiff's past relevant work, the ALJ determined that the mail clerk/candler position was light, unskilled work. (*Id.*). The ALJ also opined based on the vocational expert's testimony that said position was consistent with the DOT at 209.68-.026. (R. at 23). Given these two findings, the ALJ determined, "[a]fter assessing the claimant's remaining capacity for work and the physical and mental demands of the work she has done in the past, it is concluded that the claimant retains the residual functional capacity to perform her past relevant work as a mail clerk/candler." (*Id.*).

First, the Court finds that, in making his determination at step four, the ALJ properly utilized the three-step inquiry as required by the Court of Appeals. *See Burnett*, 220 F.3d at 120 (citations omitted). Moreover, substantial evidence supports the ALJ's determination at this step. Indeed, as discussed above, substantial evidence supports the ALJ's residual functional capacity determination

22

that Plaintiff is limited to unskilled work requiring no more than simple, repetitive tasks.[15]

Furthermore, substantial evidence supports the ALJ's determination in regard to Plaintiff's ability

to perform past relevant work as a candler, in light of the mental demands of said position.  While

Plaintiff's argument regarding the inconsistencies between the DOT's description of a mail clerk in

terms of reasoning level requirements, as compared to the ALJ's determination that the job requires

no more than simple, routine tasks is artful, it is without merit.  Indeed, at step four of the sequential

evaluation process, it is Plaintiff's burden to show that she is incapable of returning to past relevant

work.  See 42 U.S.C. §404.1520(a)(4)(iv).  Here, however, Plaintiff has failed to meet that burden.

Rather, the ALJ took testimony from Plaintiff regarding the exact functions of her former job,

consistent with S.S.R. 82-62. (R. at 198). He likewise consulted the vocational expert as to the type

of position that a "candler" is in terms of the DOT.  (R. at 218 ). The vocational expert testified that,

while the exact position "candler" is not found in the DOT, it would be similar to a "mail clerk"

position, as it is described.  (R. at 218). Based on all of this information, the ALJ made the

determination that, considering the mental demands of the job "candler," it required no more than

simple, routine tasks, which Plaintiff would be capable of performing. (R. at 23).[16]

---

[15]

See discussion *supra*, at pgs. 16-19.

[16]

The Court agrees with the Commissioner that the argument that the ALJ was required to inquire into the "inconsistencies" between the actual position and the DOT is likewise without merit. There is no inconsistency between the DOT's description of a mail clerk's duties and the ALJ's determination of the claimant's ability to do simple, routine tasks as required in the role of candler, as the position of candler is not listed in the DOT.  Specifically, the vocational expert determined that the closest position to candler would be that of mail clerk. (R. at ).  Further, the ALJ determined, based on Plaintiff's actual description of the job, that the requirements of the position are consistent with simple, repetitive tasks. *See Boone v. Barnhart*, 353 F.3d 203, 206 (holding that, "we do not adopt a general rule that an unexplained conflict between a [vocational expert's] testimony and the DOT necessarily requires reversal").  Morever, the Court finds the case cited by Plaintiff in support

Indeed, substantial evidence supports the determination that Plaintiff has the residual functional capacity to perform the position of candler. Plaintiff testified at the administrative hearing that the position required her to pass envelopes over a lighted table and to retrieve checks found inside. (R. at 195-198). The position did not require record keeping, nor did it require anything more than retrieving checks from envelopes. (R. at 198). The evidence of record supports the determination that Plaintiff had the capacity to perform this type of work, as the record supports the ALJ's residual functional capacity determination.

**VI.    Conclusion**

Based on the foregoing, this Court finds that the ALJ's determination was based on substantial evidence found in the record. Accordingly, Plaintiff's Motion for Summary Judgment [8] is DENIED, and the Commissioner's Motion for Summary Judgment [10] is GRANTED.

Appropriate Orders follow.



_s/ Nora Barry Fischer_
Nora Barry Fischer
United States District Judge


Dated:        July 22, 2009
cc/ecf:       All counsel of record.

---

of this proposition, _Smethers v. Barnhart_, Civ. A. No. 03-6814, 2005 U.S. Dist. LEXIS 2598 (E.D. Pa. Feb. 22, 2005), to be inapposite to this case. Here, unlike _Smethers_, the Court has found that the ALJ discussed Plaintiff's work limitations on a function by function basis and expressed RFC in exertional levels only after providing a narrative discussion of each function. (_See_ discussion _supra_, at Section V, A.). Additionally, _Smethers_ is distinguishable because the district court remanded in that case for a second time noting that the ALJ's analysis has "twice been problematic." _Smethers_, 2005 U.S. Dist. LEXIS 2598, at *17.